UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

v.  Case No.: 8:19-cr-173-T-17AEP

HENRY JAVIER MENDOZA

_____/

## DEFENDANT'S SENTENCING MEMORANDUM

COMES NOW defendant, Henry Javier-Mendoza, by and through undersigned counsel, files his Sentencing Memorandum in the above styled cause, and respectfully requests that this Honorable Court sentence him to a period of confinement in the Bureau of Prisons that is less than the ten-year minimum mandatory, followed by five years of supervised release. Based on the defendant's current financial circumstances, the undersigned asks that the Court waive imposition of the applicable fine.

**I.      Procedural Background**

On April 23rd, 2019, defendant Henry Javier-Mendoza was charged, in a two count Indictment, with (1) Conspiracy to possess with the intent to distribute five (5) kilograms or more of cocaine, a Schedule II controlled substance, while on board a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. § 70503(a), § 70506(a) and (b), and 21 U.S.C. § 960 (b)(1)(B)(ii); and (2) Possession with intent to distribute five kilograms or more of cocaine, a Schedule II controlled substance, while on board a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. §§ 70503(a) and 70506 (a), 18 U.S.C. § 2, and 21 U.S.C. § 960(b)(1)(B)(ii). (Doc. 1).

Count One of the Indictment alleges that from an unknown date, continuing through on or about April 13th, 2019, the defendant, and co-defendants did knowingly, willfully, and intentionally conspire with each other and other persons, both known and unknown to the Grand Jury, to distribute and possess with the intent to distribute a controlled substance, while on board a vessel subject to the jurisdiction of the United States. With respect to each of the defendants, the violation involved five (5) kilograms or more of a mixture and substance containing a detectable amount of cocaine. Count two of the Indictment alleges that during that same time frame, the defendant and co-defendants did knowingly and intentionally possess with the intent to distribute a controlled substance, while on board a vessel subject to the jurisdiction of the United States. With respect to each of the defendants, the violation involved five (5) kilograms or more of a mixture and substance containing a detectable amount of cocaine.

An order of detention pending trial was entered at the defendant's first appearance hearing on May 1st, 2019 (Doc. 34). On May 24th, 2019 the defendant entered into a plea agreement with the government wherein he agreed to tender a plea of guilty to count one of the Indictment. (Doc. 59). In exchange for his timely notification of intent to plead guilty, the government agreed not to file any additional charges against Mr. Javier-Mendoza arising from the instant offense, and not to oppose his request for a two-level downward adjustment for acceptance of responsibility, pursuant to USSG § 3E1.1(a). The government also agreed to file a motion for an additional downward adjustment of one level, pursuant to USSG § 3E1.1(b), and to consider whether any cooperation by Mr. Javier-Mendoza qualifies as "substantial assistance", warranting the filing of a motion, at the time sentencing, recommending (1) a downward departure from the applicable guideline range pursuant to U.S.S.G § 5K1.1; (2) the imposition of a sentence below a statutory minimum, if any,

pursuant to 18 U.S.C. § 3553(e), or (3) both. Finally, the government agreed that count two of the indictment would be dismissed at the time of sentencing, pursuant to Fed. R. Crim. P. 11(c)(1)(A).

On June 17th, 2019, Mr. Javier-Mendoza tendered a guilty plea to count one of the Indictment. (Doc. 64). The Court accepted the defendant's guilty plea on July 1st, 2019 and a sentencing date was set for September 19th, 2019. (Doc. 73).

## II. Statutory and Guidelines Sentencing Issues

### A. Maximum Penalties

Pursuant to 21 U.S.C. § 960(b)(1)(B), the maximum period of incarceration that may be imposed is life and the maximum fine amount that may be assessed is $10,000,000.00. Because the maximum authorized term of imprisonment is life, the offense to which Mr. Javier-Mendoza tendered a guilty plea is deemed a Class A felony, pursuant to 18 U.S.C. § 3559(a)(1). A Class A felony authorizes the imposition of a period of supervised release of *not more than five years*, pursuant to 18 U.S.C. § 3583(b)(1). However, 21 U.S.C. § 960(b)(1)(B) requires the court to impose a period supervised release of *at least five years*. Therefore, the term of supervised release that may be imposed is at least five years. *See* U.S.S.G. § 5D1.2(c)[1]. Pursuant to 18 U.S.C. § 3013 (a)(2)(A), a special assessment of $100.00 is mandatory.

---

[1] U.S.S.G. § 5D1.2(c) provides that "the term of supervised release shall not be less than any statutorily *required* term of supervised release". Thus, the provisions of 21 U.S.C. § 960(b)(1)(B) trump the provisions of 18 U.S.C. § 3559(a)(1).

### B. Applicability of Minimum Mandatory Sentences

21 U.S.C. § 960(b)(1)(B), requires the imposition of a ten-year minimum mandatory sentence where the violation of 46 U.S.C. § 70503(a)(1), to which to the defendant has entered a guilty plea, involves 5 kilograms or more of cocaine.

In *United States v. Pertuz-Peruz*, the 11th Circuit held that individuals who were convicted under the Maritime Drug Enforcement Act were not eligible for relief from the mandatory minimum sentences under the "safety valve", 18 U.S.C. § 3553(f). See 679 F.3d 1327, 1328-29 (11th Cir. 2012). However, Congress amended the safety valve to make MDLEA defendants eligible for relief, on a prospective basis, under this provision. The First Step Act (P.L. 115-391) was signed into law by the President on December 21st, 2018. Mr. Javier-Mendoza meets the eligibility criteria.[2]

### C. Advisory Guideline Range

#### 1. Base Offense Level

Pursuant to U.S.S.G. § 2D1.1(c)(1), the offense to which Mr. Javier-Mendoza tendered a guilty plea has a base offense level of **38** because the quantity alleged is 450 kg or more of cocaine.

#### 2. Offense Specific Enhancements

The United States Probation Office is seeking a two-level enhancement, pursuant to U.S.S.G. § 2D1.1(b)(3), which applies if the defendant acted as a pilot, co-pilot, captain, navigator,

---

[2] The United States Probation Office apparently agrees. Paragraph 57 of the pre-sentence investigation report provides as follows: "The minimum term of imprisonment is 10 years and the maximum is life. 21 U.S.C. § 960(b)(1)(B)(ii). However, the defendant appears to meet the criteria set forth 18 U.S.C. §§ 3553(f)(1)-(5); therefore, the Court shall impose a sentence in accordance with the applicable guidelines without regard to any statutory minimum sentence".

flight officer, or any other operation officer aboard any craft or vessel carrying a controlled substance.

On August 28th, 2019 the undersigned filed an objection to the paragraph 12 of the pre-sentence investigation report, which purports to identify Mr. Javier-Mendoza as the captain of the *King*, and the resulting two-level increase as set forth in paragraph 25. According to paragraph 12 of the P.S.R., Mr. Cedeno-Cedeno, who was on board the *Mariposa* (the second vessel that was interdicted in this investigation) readily identified himself as captain of the *Mariposa*. Unlike Mr. Cedeno-Cedeno, Mr. Javier-Mendoza never identified himself as the captain of the *King*. Also, there is nothing the factual basis, contained the plea agreement, that describes Mr. Javier-Mendoza as the captain of the *King*, or otherwise sets him apart from the two other crew members in terms of navigational responsibilities.

Co-defendant Equino Dario Palacios Loor stated that all three took turns driving the *King*. *See* P.S.R. at ¶ 17. Co-defendant Guillermo Enrique Mieles-Chinchanda, who was also on board the *King*, stated that he and his crew members *shared captain responsibilities* on board the *King*. *See* P.S.R. at ¶ 18. Both Palacios-Loor and Mieles-Chinchanda advised law enforcement that they were paid $1,500.00 prior to the venture and would have been paid $5,000.00 upon completion (see P.S.R. ¶¶ 17-18). Mr. Javier-Mendoza was remunerated in precisely the same way: $1,500.00 initially, with the promise of an additional $5,000.00 upon completion. That there is no difference whatsoever in terms of how each mariner was to be paid tends to undermine any assertion that Mr. Javier-Mendoza was tasked with additional responsibilities, or possessed a skill set that was unique to him.

If all three "shared captain responsibilities", then the two-level increase should be applied to all three mariners on board the *King* - or to none at all.

3. <u>Offense Specific Reductions</u>

As set forth in ¶ 26 of the Pre-Sentence Investigation Report, Mr. Javier-Mendoza's' advisory guideline score may be reduced an additional two levels if he meets the criteria set forth in subdivisions (1)-(5) of U.S.S.G.§ 5C1.2, pursuant to U.S.S.G. § 2D1.1(b)(17).

These provisions set forth the five-prong criteria under which the Court may avoid the imposition of the otherwise applicable minimum mandatory which, as indicated above, now apply to offenses under the MDLEA, and reduce the accused person's otherwise applicable guideline range by two levels. These criteria are as follows: (1) the defendant does not have more than one criminal history point; (2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense; (3) the offense did not result in death or serious bodily injury to any person; (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C.§ 848, and (5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the Court that the defendant has complied with this requirement.

The defendant meets the criteria set forth in U.S.S.G § 5C1.2 in that he does not have more than one criminal history point (Mr. Javier-Mendoza has no prior criminal record whatsoever), did not threaten anyone during the commission of the offense herein, did not possess a firearm or other dangerous weapon during the commission of the offense herein and no one was killed or injured

as a result of its commission. Further, there is nothing to indicate that Mr. Javier-Mendoza organized, managed, supervised or led any other person during the commission of the offense to which he pled guilty to. Finally, on May 29th, 2019, Mr. Javier-Mendoza, along with the undersigned, met with the case agents at the Pinellas County Jail wherein he provided a full and truthful account of his involvement, and answered, to the best of his knowledge, all questions directed to him.

Because the instant offense was committed after the First Step Act went into effect, the Court has the authority deviate from the minimum mandatory. The undersigned is asking this Court to reduce the defendant's guideline range by two levels and impose a sentence that is less than the applicable ten year minimum mandatory.

### 4. Chapter Three Enhancements

There are no Chapter 3 enhancements applicable to the defendant's guideline calculation and the United States Probation has not asserted any in the Pre-sentence Investigation Report.

### 5. Chapter Three Reductions

In accordance with the plea agreement, as set forth in paragraph A.6. (page 3), the government will not oppose the defendant's request to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG § 3E1.(1(a). The departure is warranted. Upon review of the discovery materials, Mr. Javier-Mendoza advised the undersigned that he wanted to accept responsibility for his actions and asked that the undersigned contact the U.S. Attorney's Office about a plea agreement. Additionally, he advised that he would be willing to meet with authorities to provide a full, complete, and honest account of his involvement and cooperate in any way he could.

The government also agreed to file a motion for a downward adjustment of one additional level if (1) the government does not receive any information suggesting that the recommendation is unwarranted; (2) the defendant complies with the provisions of USSG § 3E1.1(b); and (3) the defendant complies with all terms and conditions of the plea agreement including the timely submission of the financial affidavit. Because Mr. Javier-Mendoza's base offense level, prior to the initial two point reduction for acceptance of responsibility is 16 or greater, and he timely notified the government of his intent to enter a guilty plea, thereby permitting the government to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently, he meets the additional criteria for the added one level reduction under U.S.S.G. § 3E1.1(b). The undersigned expects that the government will file a motion for the additional one level reduction prior to sentencing.

6. Criminal History

The defendant has no criminal history points, which places him in Category I for purposes of determining the advisory guideline range.

**III. Substantial Assistance**

As set forth in paragraph 9 plea agreement (Doc. 59), the defendant agreed to cooperate fully with the United States in the investigation and prosecution of other persons, and to testify fully and truthfully in any court proceeding in connection with the charges in the case. The government in turn agreed to consider whether any such assistance qualifies as "substantial assistance" warranting the filing of motion recommending a downward departure from the applicable guideline range pursuant to U.S.S.G. § 5K1.1 or the imposition of a sentence below a statutory minimum pursuant to 18 U.S.C. § 3553(e).

To honor his agreement, (and as stated above) Mr. Javier Mendoza met with case agents to answer any questions they had, including questions related to his own activities.

### IV.   Summary

The following table sets out the minimum and maximum periods of incarceration and supervised release, and the maximum fine amount. Column one reflects the safety valve provision as applied to both the minimum mandatory and the guideline range and omits the Chapter Two enhancement. Column two reflects the safety valve provision as applied to both the minimum mandatory and the guideline range and includes the Chapter Two Enhancement. The third column provides for no safety valve relief and includes the Chapter Two enhancement.

| Without Ch.2 Enhancement & Application of Safety Valve (Min. Man. & Guideline) | With Ch.2 Enhancement & Application of Safety Valve (Min. Man. & Guideline) | With Ch.2 Enhancement & Without Application of Safety Valve (Min. Man & Guideline) |
|---|---|---|
| Min. Man.: N/A | Min. Man.: N/A | Min. Man.: 10 years. |
| Base Offense Level: 38 | Base Offense Level: 38 | Base Offense Level: 38 |
| Ch. 2 Enhancement: 0 | Ch. 2 Enhancement: +2 | Ch. 2 Enhancement: +2 |
| Acceptance: -3 | Acceptance: -3 | Acceptance: -3 |
| Cooperation: -2 | Cooperation: -2 | Cooperation: 0 |
| Total Offense Level: 33 | Total Offense Level: 35 | Total Offense Level: 37 |
| Adv. Guideline: 135-168 (11.25-14) | Adv. Guideline: 168-210 (14-17.5) | Adv. Guideline: 210-262 (17.5-21.8) |
| Fine: $10,000,000.00. | Fine: $10,000,000.00. | Fine: $10,000,000.00. |
| Supervised Release: 5 years (min). | Supervised Release: 5 years (min). | Supervised Release: 5 years (min). |
| Special Assessment: $100.00. | Special Assessment: $100.00 | Special Assessment $100.00. |

## V.     Analysis of the Factors Set Forth at 18 U.S.C. § 3553(a)

The Court has broad discretion in determining an appropriate sentence since the Supreme Court made the sentencing guidelines advisory. *See United States v. Booker*, 543 U.S. 220 (2005). Post-*Booker*, sentencing requires a two-step analysis: first, the court must consult the guidelines and correctly calculate the range provided by the guidelines, and, second, the court must consider several factors to determine a reasonable sentence, including, (1) the nature and circumstances of the offense, and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed vocational or educational training or medical care; (6) the kinds of sentences available; (7) the sentencing guideline range; (8) pertinent policy statements of the sentencing commission; (9) the need to avoid unwanted sentencing disparities; and (10) the need to provide restitution to the victims. *See United States v. Talley*, 431 F3d. 784 (11th Cir. 2005).

### A. History and Characteristics of the Defendant

Mr. Javier-Mendoza was born in Ecuador on January 6th, 1996 and has lived there his entire life. His biological father has always lived within a several mile radius of him but has "never been in the picture". Mr. Mendoza knows who his father is, but states that the latter has never expressed an interest in forming or maintaining a healthy father/son relationship with him. His father has never provided any sort of financial assistance during Mr. Javier-Mr. Mendoza's childhood or adolescence.

At age eight, and while in the fourth grade, Mr. Javier-Mendoza's mother became ill and moved to another Ecuadorian province to obtain treatment. He and his mother were very poor.

Mr. Javier-Mendoza was able to attend school up to the fourth grade through financial assistance provided by a maternal uncle residing in the United States. Once his mother became ill and moved away, Mr. Javier-Mendoza went to live with his grandparents. At that time, his uncle's assistance abated, and he could no longer attend school. Mr. Javier Mendoza's grandmother educated him at home from the fifth grade through the tenth grade. Due to the family's difficult financial circumstances, Mr. Javier Mendoza began working at age seven to assist. His first job involved picking crops in a field, and he has maintained employment in various capacities ever since. At age fifteen, and after completing the tenth grade, he dropped out of school to spend more time working and earning money for the family. From age fifteen until the time of his arrest herein, Mr. Javier-Mendoza worked in the fishing industry, both the in warehouses and on boats as a fisherman.

Mr. Javier Mendoza met his wife in March of 2017, at just twenty-one years of age. She has a four-year old son from a previous relationship. Mr. Javier-Mendoza treats her child as if he were his own. The couple also have a two-year old child in common who Mr. Javier-Mendoza reports is suffering from some sort of unidentified medical condition. During our several discussions, he has stated that he and his wife are extremely poor, and barely surviving. In talking about his wife and children, Mr. Javier-Mendoza becomes visibly emotional. He is extremely worried about their well-being, which is only exacerbated by his absence and inability to provide any degree of support. Mr. Javier-Mendoza vowed that he would never be an absentee father like his own. Yet, in a seemingly cruel twist of irony, his rash and impertinent decision to become involved in this venture will render him exactly that. His intent was to better his family's quality of life but, in hindsight, he could not have done more to undermine and destroy it. He is utterly *haunted* by these thoughts (as set forth in ¶ 51 of the PSI, medical reports from the Pinellas County

Jail indicate that he has requested to be seen by medical staff for "how to survive in jail for a long time"; he was evaluated and diagnosed with "R/O Adjustment Disorder).

Although it is already reflected in his sentencing guideline range, it merits re-iteration that Mr. Javier-Mendoza has no prior criminal history. Barely out of his teen years, he is raising two very young children in extreme poverty with very little in the way of hope for a better life. But for these circumstances, he would have never become involved in the conduct which led to the indictment herein. There is a meaningful distinction to be drawn, I submit, between an individual who engages in this sort of activity for exhilaration or to enhance an already comfortable lifestyle, versus the individual who does so out of sheer necessity to survive.

### B. Nature and Circumstances of the Offense

Mr. Javier-Mendoza's family and social acquaintances knew that he was struggling financially. In the weeks preceding the venture herein, he was contacted by phone about running and "errand" that would require him to travel to the province of Esmeralda. Mr. Javier-Mendoza suspected that the errand involved the transportation of illegal substances but, upon learning he would be paid an initial $1,500.00 cash, ignored his better sense of judgment and agreed. He travelled nine hours by bus to a hotel, where he was given $1,500.00 in U.S. currency, which he sent to his family.

At 10:00 p.m., a taxi cab picked him up, along with co-defendants Guillermo Enrique Mieles-Chichanda and Equinio Dario Palacios-Loor. Mr. Javier-Mendoza recognized them from the fishing docks in his home town but had never been introduced to them previously. When they arrived at the dock, they observed two men in camouflage masks standing in a small boat. Mr. Javier-Mendoza and his two co-defendants accompanied the masked men into the open waters to

a larger go-fast vessel. The masked men remained on the smaller vessel, while the others boarded the go-fast. They were told that there was a second go-fast boat nearby, but they never saw it.

Prior to the interdiction, they were at sea for between nine and ten days. They would hit refueling points in the open sea and depart from there. Their destination was a point off the coast of Mexico. On the day of their arrest, Mr. Javier-Mendoza and his two co-defendants observed a helicopter in the sky. After stopping briefly to observe, they began moving once again which prompted the helicopter's occupants to disable the go-fast boat's engines. They were advised by Coast Guard personnel that narcotics trafficking was suspected. Members of the interdiction team inserted a stick like object into the bottom of the boat and determined that there was a white powdery substance stored in what appeared to be false bottoms.

As set forth in the presentence investigation report, the boarding team conducted ion scans of the go-fast vessels which was positive for cocaine. Five hundred and forty-one kilograms of cocaine were recovered from Mr. Javier-Mendoza's vessel (the "*King*") and five hundred and eighty-one kilograms were recovered from the second go-fast vessel (the "Mariposa") which was also interdicted in the same vicinity.

### C. Need to Reflect the Seriousness of the Offense, Promote Respect for the Law, and Need to Protect the Public

Some of the other factors the Court must consider in determining an appropriate sentence include (1) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (2) need to protect the public, and (3) the need to provide the defendant with vocational or educational training or medical care.

The sentence imposed by this Court will entail a period of years in the Bureau of Prisons. Mr. Javier-Mendoza will be confined in a location that is many thousands of miles from his wife

and children. He has never been to America before and does not speak English. The environment he finds himself in could not be any more foreign, distant, and unfamiliar – geographically and otherwise. Mr. Javier-Mendoza will, assuredly, never be involved be involved in a situation like this one again. A period of incarceration, below the ten-year minimum mandatory, will nonetheless reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense. Mr. Javier-Mendoza has a very pleasant and gentle disposition; there is nothing violent or malicious about him. He presents no danger to the public whatsoever. My position in that regard is only buttressed by the fact that he will be deported upon completion of the incarcerative component of his sentence. A sentence below the otherwise applicable minimum mandatory, which the Court has the authority to impose in accordance with the First Step Act, is sufficient, but not greater than necessary, to achieve the purposes of sentencing.

### D. Need to Avoid Unwarranted Sentencing Disparities

The Court must also consider the need to avoid unwanted sentencing disparities and, to that end, this section outlines some recent cases of a similar nature, in the Middle District of Florida, and the penalties imposed.

- <u>United States v. Juan Diego Contreras Flores, Case No.: 8:18-cr-390-T-17JSS (Information Obtained from Charging Document, Plea Agreement, Sentencing Memorandum and Judgment).</u>

On August 30th, 2018, the defendant was charged in a two-count indictment with conspiracy with intent to possess and distribute 5kgs or more of cocaine while on board a vessel subject to the jurisdiction of the United States and possession with intent to distribute 5 kgs or more of cocaine while on board a vessel subject to the jurisdiction of the United States.

In August of 2018, the defendant and five indicted co-conspirators engaged in a cocaine smuggling venture. Their go-fast vessel was interdicted by the U.S. Coast Guard approximately 202 nautical miles southwest of Isle de Socorro, Mexico. Law enforcement officials recovered multiple bales of cocaine with an approximate weight of 1,307 kgs. The defendant's base offense level was 38 with a ten-year minimum mandatory sentence. Pursuant to a plea agreement, the defendant entered a guilty plea to count one of the Indictment. On April 5th, 2019, the defendant was sentenced to 87 months in the Bureau of Prisons, followed by five years of supervised release. Count two was dismissed at the time of sentencing.

- <u>United States v. Rosemberth Garcia Torres, Case No.: 8:18-cr-00427-WFJ-JSS (Information Obtained from Charging Document, Plea Agreement, Sentencing Memorandum, and Judgment).</u>

On September 25th, 2018, the defendant was charged in a two-count indictment with conspiracy with intent to possess and distribute 5kgs or more of cocaine while on board a vessel subject to the jurisdiction of the United States and possession with intent to distribute 5 kgs or more of cocaine while on board a vessel subject to the jurisdiction of the United States.

On or about September 11th, 2018, the defendant and his two indicted co-conspirators were on a small vessel that was transporting cocaine when it was interdicted by the United States Coast Guard in international waters. The boarding team located sixty bales of cocaine, weighing 1,200 kgs. The defendant's base offense level was 38 with a ten-year minimum mandatory sentence. Pursuant to a plea agreement, the defendant entered a guilty plea to count one of the Indictment. In his sentencing memorandum, counsel for the defendant asked the Court to impose a sentence that was less than the otherwise applicable ten year minimum mandatory based on the First Step revisions to Safety Valve. On February 25th, 2019, the defendant was sentenced to 98 months in

the Bureau of Prisons, followed by five years of supervised release. Count two was dismissed at the time of sentencing.

- <u>United States v. Humberto Emigdio Angulo Mero, Case No.: 8:18-cr-424-T-02TGW (Information Obtained from Charging Document, Plea Agreement, Sentencing Memorandum, and Judgment).</u>

On September 25th, 2018, the defendant was charged in a two-count indictment with conspiracy with intent to possess and distribute 5kgs or more of cocaine while on board a vessel subject to the jurisdiction of the United States and possession with intent to distribute 5 kgs or more of cocaine while on board a vessel subject to the jurisdiction of the United States.

On September 13th, 2018, the defendant and two indicted co-conspirators were on board a low-profile go fast vessel when it was interdicted by the United States Coast Guard. The defendant acted as captain, identified himself as master of the vessel, and had been provided a GPS which he used to navigate it. The boarding team discovered 32 bales of cocaine weighing approximately 770 kgs.

The defendant's base offense level was 38 with a ten-year minimum mandatory sentence. On June 30th, 2019, the defendant was sentenced to 98 months in the Bureau of Prisons. No period of supervised release was imposed. Count two was dismissed at the time of sentencing.

### E. Part F of Pre-Sentence Investigation Report

Part F of the Presentence Investigation Report identifies factors that may warrant a sentence outside of the advisory guideline system. In paragraph 74, the United States Probation Office states that it has reviewed the applicable statute (18 U.S.C. § 3553(a)(1)-(7)) and *has* identified factors that may warrant a downward variance. The factors identified by Probation are the same as those identified by the undersigned *infra*. and include a lack of involvement by Mr. Javier

Mendoza's parents throughout his childhood and adolescence, his lack of education, and his employment since age seven.

## VI.     Conclusion

In correctly calculating the advisory guideline range, a two-level increase under USSG § 2D1.1(b)(3)(C) should not be applied unless all three members of the *King* are subject to the same increase. All were paid the in the same manner and amount, all three "took turns driving the vessel" and all three "shared captain responsibilities". Further, a three-level reduction for acceptance of responsibility, and an additional two-level reduction under U.S.S.G. § 2D1.1(17)(for a total offense level of 33) is both legally cognizable and appropriate. Given the totality of the circumstances presented herein (including the defendant's cooperation) and their applicability to the factors set forth in 18 U.S.C. § 3553(a), I submit that a sentence below the otherwise applicable ten-year minimum mandatory is sufficient, but not more than necessary to reflect their stated purposes. I am therefore asking this Honorable Court to sentence Mr. Javier-Mendoza accordingly.

Donald J. Kilfin
The Kilfin Law Firm, P.C.
400 Carillon parkway, #130
St. Petersburg, FL 33716
(727) 256-3598 (Phone)
don@kilfinlaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 12, 2019, I electronically filed the foregoing with the Clerk of Court by using CM/ECF system which will send notice of electronic filing to all counsel of record.

/s/ Donald J. Kilfin

Donald J. Kilfin